Steven J. Lechner, D.C. Bar No. AZ 0001
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST K. LEHMANN & ASSOCIATES OF MONTANA, INC.<br>Plymouth Building, Suite 1140<br>12 South 6th Street<br>Minneapolis, Minnesota 55402<br><br>MOUNT ROYAL JOINT VENTURE<br>Plymouth Building, Suite 1140<br>12 South 6th Street<br>Minneapolis, Minnesota 55402<br><br>      Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE<br>Secretary<br>U.S. Department of the Interior<br>1849 C Street, N.W., Mail Stop 7229<br>Washington, D.C. 20240<br><br>C. STEPHEN ALLRED<br>Assistant Secretary, Land and Minerals Management<br>U.S. Department of Interior<br>1849 C Street, N.W., Room 6615<br>Washington, D.C. 20240<br><br>UNITED STATES DEPARTMENT OF INTERIOR<br>1849 C Street, N.W.<br>Washington, D.C. 20240 | Case No. _____<br><br>Judge: _____ |

| | |
|---|---|
| JAMES M. HUGHES<br>Acting Director<br>Bureau of Land Management<br>1849 C Street, N.W., Room 5655<br>Washington, D.C. 20240<br><br>BUREAU OF LAND MANAGEMENT<br>1849 C Street, N.W., Room 5655<br>Washington, D.C. 20240<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, Ernest K. Lehmann & Associates of Montana, Inc., and Mount Royal Joint Venture, hereby file this Complaint against the above-named Defendants, and allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint, pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the laws of the United States, including, but not limited to: (a) the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*; (b) the General Mining Law of 1872, 30 U.S.C. § 21 *et seq.*; and (c) the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

### VENUE

2. Venue rests properly in this District, pursuant to 28 U.S.C. § 1391(e)(2), because Defendant, U.S. Department of the Interior, resides in this judicial district.

### PARTIES

3. Plaintiff Ernest K. Lehmann & Associates of Montana, Inc. ("ELAM") is a corporation organized under the laws of the State of Montana, with its principal place of business in Minneapolis, Minnesota. ELAM owns five of the six unpatented mining claims that are the subject of this action.

4. Plaintiff Mount Royal Joint Venture ("MRJV") is a joint venture organized under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota. MRJV owns the remaining unpatented mining claim that is the subject of this action.

5. Defendant Dirk Kempthorne is the Secretary, U.S. Department of the Interior. Defendant Kempthorne is responsible for administering the federal mining laws on lands managed by the Bureau of Land Management ("BLM"). Defendant Kempthorne is sued in his official capacity.

6. Defendant C. Stephen Allred is the Assistant Secretary, Land and Minerals Management, U.S. Department of the Interior. Defendant Allred is responsible for administering the federal mining laws on lands managed by the BLM, subject to the supervision of Defendant Kempthorne. Defendant Allred is sued in his official capacity.

7. Defendant U.S. Department of the Interior ("DOI") is responsible for administering the federal mining laws on lands managed by the BLM.

8. Defendant James M. Hughes is the Acting Director of the BLM. Defendant Hughes is responsible for administering the federal mining laws on lands managed by the BLM, subject to the supervision of Defendants Kempthorne and Allred. Defendant Hughes is sued in his official capacity.

9. Defendant BLM is the agency within the DOI responsible for administering the federal mining laws on federal lands that it manages.

## BACKGROUND

10. Congress has long encouraged its citizens to discover and develop the Nation's mineral resources. For example, in passing the General Mining Law of 1872, 30 U.S.C. § 21 *et seq.* ("General Mining Law"), Congress granted all citizens a statutory right to enter upon

federal lands for the purposes of locating and maintaining mining claims for mineral prospecting, exploration, development, extraction, and other uses reasonably incident thereto:

> [A]ll valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States . . . .

30 U.S.C. § 22.

11. This policy continued when Congress passed the Mining and Minerals Policy Act of 1970 and stressed that it is the:

> [C]ontinuing policy of the Federal Government in the national interest to foster and encourage private enterprise in (1) the development of economically sound and stable domestic mining, minerals, metal and mineral reclamation industries, (2) the orderly and economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satisfaction of industrial, security and environmental needs . . .
>
> It shall be the responsibility of the Secretary of the Interior to carry out this policy when exercising his authority under such programs as may be authorized by law other than this section.

30 U.S.C. § 21a.

12. In 1976, Congress reaffirmed this policy when it passed the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, and mandated:

> That the public lands be managed in a manner which recognizes the Nation's need for domestic sources of *minerals*, food, timber, and fiber from the public lands including implementation of the Mining and Minerals Policy Act of 1970 (84 Stat. 1876, 30 U.S.C. 21a) as it pertains to the public lands.

43 U.S.C. § 1701(a)(12) (emphasis added).

13. The Sweet Grass Hills ("Hills") are an area of plains and volcanic buttes located near the Canadian border in Liberty and Toole Counties, Montana. In the latter part of the 19th century, the Hills were part of an Indian Reservation inhabited by various Indian tribes. Subsequently, the tribes ceded the Hills back to the United States without reserving any rights

4

and, thus, the federal locatable mineral estate within the Hills was open to mineral entry and location under the General Mining Law. Soon thereafter, upon the discovery of gold, silver, copper, lead, iron, marble, and coal, numerous mining claims were located and subsequently patented. As a result, the Hills now consist of intermingled private, state, and federal surface and mineral interests, with most of the area being privately owned.

14. In 1983, Plaintiffs began to explore the Hills for valuable mineral deposits, both independently and through a series of joint ventures with other mining companies. During the course of this exploration, Plaintiffs discovered, on East Butte, a large gold deposit, commonly known as the "Tootsie Creek Deposit".

15. As a result of this discovery, Plaintiffs located numerous unpatented mining claims, and acquired additional real property interests (private mineral leases, private surface leases, and fee lands) on East Butte. Fourteen of these unpatented mining claims comprise what is referred to herein as the "Claim Block," and are identified as: Patricia #7, 8, 14-16, 18, and 20; Butte #47 and 48; East Butte #4-6; and Royal East #1 and 2.

16. On or about October 7, 1985, Plaintiffs filed a Plan of Operations ("1985 Plan") for the Claim Block with the BLM to further develop and delineate the Tootsie Creek Deposit. On or about June 30, 1986, the BLM approved the 1985 Plan.

17. On or about February 25, 1992, Plaintiffs filed another Plan of Operations ("1992 Plan") for the Claim Block to further develop and delineate the Tootsie Creek Deposit.

18. Although approval of the 1992 Plan was "non-discretionary," the BLM delayed approval of the 1992 Plan until after preparation of an environmental impact statement ("EIS") because of purported Native America religious concerns.

19. While preparing the EIS for the 1992 Plan, the BLM consulted with Native American groups to collect information, identify their concerns, and locate any specific cultural sites that might be affected. The Native Americans could not identify any specific sites that would be impacted by activities under the 1992 Plan.

20. In January 1993, the BLM released the draft EIS for the 1992 Plan for public comment. In the draft EIS, the BLM analyzed the potential impacts of the 1992 Plan on, *inter alia*, Native American religious practices and potable water. The BLM concluded that the 1992 Plan would have no adverse impacts upon these or any other resources. Thus, the BLM recommended, as its "Preferred Alternative," that the 1992 Plan be approved.

21. On or about March 26, 1993, despite the "Preferred Alternative" in the draft EIS, the Lewistown District Manager, BLM ("District Manager"), asked the Field Solicitor, DOI, whether the BLM regulations at 43 C.F.R. subpart 3809 ("3809 regulations") could be used to deny the 1992 Plan. On or about May 20, 1993, notwithstanding his inquiry to the Field Solicitor, the District Manager advised Plaintiffs that the BLM was going to "go ahead and approve" the 1992 Plan.

22. On or about June 1, 1993, then-U.S. Representative Pat Williams of Montana wrote a letter to then-Secretary of the Interior Bruce Babbitt demanding that the 1992 Plan be denied, that the Hills be withdrawn from mineral entry and location, and that Plaintiffs' unpatented mining claims be contested.

23. On or about June 2, 1993, the Field Solicitor responded to the March 26, 1993, inquiry made by the District Manager. The Field Solicitor advised the District Manager that the 1992 Plan could not be denied because it would not cause "unnecessary or undue degradation," as those terms are defined in the 3809 regulations.

24. On or about June 8, 1993, Josh Drew, Special Assistant to then-BLM Director Jim Baca, wrote a memorandum to Director Baca regarding the pending 1992 Plan. In that memorandum, Mr. Drew advised that the "BLM feels the [draft EIS] is adequate." Mr. Drew also advised that "the earliest the plan of operations could be approved would be September; in fact, [the] State Director . . . assured [Plaintiffs] that this would be the case." *Id.* Mr. Drew then advised that "[w]ith careful handling, the approval [of the 1992 Plan] could be delayed many months or even years." *Id.* Mr. Drew also suggested that the BLM "actively pursue measures to prevent mineral activity in this area." Mr. Drew further advised that a "task force" was being created "to study avoidance measures and recommend an alternative to mineral exploration in the Sweet Grass Hills." Finally, Mr. Drew asked whether Director Baca would like him to participate on the "task force." *Id.* A handwritten note on the memorandum, signed "JB," indicating Jim Baca, reads, "Josh - Proceed immediately. Do Press. See Me."

25. On or about June 14-15, 1993, the task force, consisting of BLM and DOI employees, met in Washington, D.C., to find a way to prevent mining in the Hills. During the meeting, task force member Karen Hawbecker, Office of the Solicitor, DOI, called Karen Dunnigan, Field Solicitor's Office, DOI, several times seeking advice on how the Director could "stop development" in the Area. After "receiv[ing] additional guidance from the Director[,]" and considering various alternatives as to how to stop Plaintiffs from exercising their lawful rights, the task force recommended that Director Baca "[s]eek permanent withdrawal of the Sweet Grass Hills from mineral entry and suspend processing of the [1992] Plan . . . until the BLM verifies claim status."

26. Shortly thereafter, Director Baca ordered implementation of the task force's recommendation. In accordance with Director Baca's instructions, on July 15, 1993, the State

Director filed a petition with the Assistant Secretary, DOI, to withdraw the entire federal locatable mineral estate in the Hills (*i.e.*, ~19,685 mineral acres) from mineral entry and location for 20 years.

27.   On or about August 3, 1993, notice was published in the *Federal Register* that the Assistant Secretary had approved the BLM's withdrawal petition. 58 *Fed. Reg.* 41289 (August 3, 1993). The notice also provided that the entire federal locatable mineral estate in the Hills (*i.e.*, ~19,685 mineral acres) was segregated from mineral entry and location for two years, unless the withdrawal application was denied, canceled, or approved in final form prior thereto ("First Segregation Period"). *Id.* The area segregated encompassed the Tootsie Creek Deposit, including the Claim Block. *Id.* Illogically, the notice provided that the segregated area would remain open to mineral leasing, including oil and gas leasing, and that the BLM would continue to accept applications for new communication sites on East Butte.

28.   On or about July 28, 1995, the Defendant DOI segregated the same acres for another two-year period ("Second Segregation Period"). 60 *Fed. Reg.* 38852 (July 28, 1995). Finally, on or about April 10, 1997, Defendant DOI withdrew these same acres from mineral entry and location for a period of twenty years, while leaving the area open to mineral leasing, including oil and gas leasing, and continuing to accept applications for new communication sites on East Butte. 62 *Fed. Reg.* 17633 (April 10, 1997).

29.   Shortly after the First Segregation Period began, the BLM suspended processing of the 1992 Plan and, following the task force's recommendation, began to purportedly examine Plaintiffs' claims in the Claim Block for validity. At this time there were over 200 unpatented mining claims in the Hills. Despite this fact, only Plaintiffs' claims were purportedly examined for validity.

30.   On or about November 15, 1995, Plaintiffs received the BLM's Validity Report regarding Plaintiffs' claims in the Claim Block. In that report, the BLM concluded that eight out of the fourteen claims were valid under the General Mining Law. These claims were: Patricia #7, 8, 18, and 20; Butte #47 and 48; and East Butte #4 and 5. Noticeably absent from the BLM's Validity Report was any analysis regarding four of Plaintiffs' claims: Patricia #14-16 and Royal East #1. With respect to the two remaining claims, East Butte #6 and Royal East #2, the analysis in the BLM's Validity Report indicated that these claims were indeed valid. In short, the analysis in the BLM's Validity Report confirmed that ten of Plaintiffs' claims in the Claim Block were valid and failed to prove that any of Plaintiffs' four remaining claims were invalid.

31.   In March 1996, BLM filed a Complaint contesting the validity of: Patricia #14-16; East Butte #6; and Royal East #1 and 2 ("Six Contested Claims"). In its Complaint, the BLM alleged that there had been no discovery of a valuable mineral deposit on those claims and requested that those claims be declared invalid. Plaintiffs timely filed an Answer to the Complaint, in which they denied the allegations in the Complaint.

32.   On or about April 29, 1997, Administrative Law Judge ("ALJ") Harvey C. Sweitzer, Office of Hearings and Appeals ("OHA"), issued a Pre-Hearing Order, which provided that the basis for the BLM's Complaint was the analysis contained in the BLM's Validity Report and that the BLM would rely on the facts set forth in the Validity Report. Importantly, counsel for the BLM expressly approved the Pre-Hearing Order as to form and content.

33.   In March and April 1998, a five-day contest hearing was held before ALJ Sweitzer. At the commencement of the hearing, the BLM submitted a so-called "addendum" to its Validity Report, ostensibly to update the price of gold. This document, however, was much more than an "addendum" because it contained an entirely new analysis of the Six Contested

Claims. Although Plaintiffs were unaware of the analysis in the "addendum" prior to its submission, ALJ Sweitzer, in direct contravention of his Pre-Hearing Order, admitted the addendum into evidence and allowed the BLM to testify regarding the analysis therein.

34. On or about April 28, 1999, ALJ Sweitzer ruled that the Six Contested Claims were invalid for lack of discovery of a valuable mineral deposit. Plaintiffs timely filed an appeal of that decision with the Interior Board of Land Appeals ("IBLA"). On or about March 16, 2004, the IBLA affirmed, as modified therein, ALJ Sweitzer's ruling. *United States v. E. K. Lehmann & Associates of Montana, Inc., et al.*, 161 IBLA 40 (2004).

35. The IBLA's decision is "final agency action for which there is no other adequate remedy in a court."

36. Plaintiffs have suffered "legal wrong" and are "adversely affected" and/or "aggrieved" by the IBLA's decision because said decision declared Plaintiffs' Six Contested Claims: Patricia #14-16; East Butte #6; and Royal East #1 and 2, invalid for lack of discovery.

### FIRST CLAIM FOR RELIEF
(Violation of the APA)

37. Plaintiffs incorporate the allegations in paragraphs 1-36 as if fully set forth herein.

38. An unpatented mining claim: "is property in the fullest sense of that term; and may be sold, transferred, mortgaged, and inherited without infringing any right or title of the United States." *Wilbur v. U.S. ex rel. Krushnic*, 280 U.S. 306, 317-318 (1930) (quoting *Belk v. Meagher*, 104 U. S. 279, 283 (1881)). As such, due process requires that a hearing be conducted before an unpatented mining claim may be declared invalid. *See e.g., United States v. Keith V. O'Leary*, 63 I.D. 341 (1959). Such a hearing shall be conducted in accordance with the APA. *Id.*

39. Under the APA, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). There is nothing in the General Mining Law regarding the burden of proof. Thus, because the BLM filed the Complaint seeking an order declaring the Six Contested Claims invalid, the BLM was the "proponent of the order." Therefore, under the APA, the BLM had the "burden of proof."

40. The "burden of proof," as used in the APA, means "burden of persuasion." *Director, Office of Workers' Compensation Programs v. Greenwich Colliers*, 512 U.S. 267, 276 (1994).

41. The IBLA held:

> In a mining contest, the contestant bears the burden of making a prima facie case in support of its allegations that the contested claims are invalid . . . . If a prima facie case is established, the burden shifts to the contestee (the mining claimant) to overcome that case by a preponderance of evidence.

*E. K. Lehmann & Associates*, 161 IBLA at 44-45. Thus, the IBLA erroneously placed the burden of persuasion on Plaintiffs.

42. Therefore, the IBLA's decision was: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*.

### SECOND CLAIM FOR RELIEF
(Violation of the General Mining Law)

43. Plaintiffs incorporate the allegations in paragraphs 1-42 as if fully set forth herein.

44. The validity of a mining claim under the General Mining Law depends on the

11

"discovery" of a "valuable mineral deposit." *See* 30 U.S.C. §§ 22-23. In order to qualify as a "valuable mineral deposit", the discovered mineral deposit must satisfy the "Prudent Man Test," *i.e.*, be of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *Castle v. Womble*, 19 L.D. 455, 457 (1894)).

45.     In declaring Plaintiffs' Six Contested Claims invalid, the IBLA made, *inter alia*, the following errors:

a.  Erroneously interpreted and misapplied the General Mining Law;

b.  Failed to apply and/or misapplied establish precedent regarding the law of "discovery" and the "Prudent Man Test";

c.  Erroneously concluded that the BLM had presented a *prima facie* case;

d.  Failed to apply and/or misapplied the "Group Claim Rule";

e.  Failed to apply and/or misapplied geological inference principles;

f.  Erroneously relied upon U.S. Geological Survey Circular 831;

g.  Failed to consider all credible and relevant evidence;

h.  Erroneously relied on incorrect and/or misleading information;

i.  Improperly rejected the mine model presented by Plaintiffs while erroneously relying on the BLM's "model";

j.  Failed to give appropriate deference to its sister agency, the Bureau of Mines;

k.  Failed to apply an objective economic analysis;

l.  Arbitrarily and incorrectly used the price of gold as of the date of the hearing; and

m.  Erroneously relied on the "addendum" to the BLM's Validity Report and BLM testimony related thereto.

46. Accordingly, the IBLA's decision was: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*.

### THIRD CLAIM FOR RELIEF
(Violation of Due Process)

47. Plaintiffs incorporate the allegations in paragraphs 1-46 as if fully set forth herein.

48. It is well established that an unpatented mining claim is property protected by the Due Process Clause of the Fifth Amendment and that no owner may be deprived of an unpatented mining claim without due process of law.

49. The actions of Defendants in unreasonably and unlawfully delaying the processing of the 1992 Plan prohibited Plaintiffs from confirming the existence of a preexisting discovery, caused the contest hearing to be an inequitable and inadequate fact-finding procedure, and resulted in Plaintiffs being deprived of their property without due process of law.

50. The actions of ALJ Sweitzer in admitting into evidence and allowing testimony regarding the "addendum" to the BLM's Validity Report unfairly surprised and unduly prejudiced Plaintiffs, caused the contest hearing to be an inequitable and inadequate fact-finding procedure, and resulted in Plaintiffs being deprived of their property without due process of law.

51. Accordingly, the actions of Defendants, which culminated in the IBLA's erroneous decision, were (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.Declare the IBLA's decision was: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*;

B.Hold unlawful and set aside the IBLA's decision;

C.Declare the Plaintiffs' Six Contested Claims: Patricia #14-16; East Butte #6; and Royal East #1 and 2, valid under the General Mining Law and either order Defendants to reinstate those claims or, in the alternative, grant Plaintiffs a trial *de novo*;

D.Award Plaintiffs attorneys' fees, costs, and other expenses in accordance with law, including but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

E.Award Plaintiffs such other and further relief as the Court deems just and equitable.

DATED this 25th day of April 2007.

        Respectfully Submitted By:

        MOUNTAIN STATES LEGAL FOUNDATION

        */s/ Steven J. Lechner*

        Steven J. Lechner, D.C. Bar No. AZ 0001
        2596 South Lewis Way
        Lakewood, Colorado 80227
        (303) 292-2021
        (303) 292-1980 (facsimile)
        lechner@mountainstateslegal.com

        Attorney for Plaintiffs

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS
ERNEST K. LEHMANN & ASSOCIATES OF MONTANA, INC.; MOUNT ROYAL JOINT VENTURE

### DEFENDANTS
DIRK KEMPTHORNE, Sec., U.S. Dep't of Interior; C. STEPHEN ALLRED, Ass't Sec., Land and Minerals Management, U.S. Dep't of Interior; U.S. DEPARTMENT OF INTERIOR; JAMES M. HUGHES, Acting Director, Bureau of Land Management; BUREAU OF LAND MANAGEMENT

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Hennepin, MN
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Steven J. Lechner
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021

Case: 1:07-cv-00762
Assigned To: Kennedy, Henry H.
Assign. Date: 4/26/2007
Description: ADMN. AGENCY REVIEW

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)
- ( ) 1 U.S. Government Plaintiff
- (X) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**A. Antitrust**
- 410 Antitrust

**B. Personal Injury/Malpractice**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

**(X) C. Administrative Agency Review**
- 151 Medicare Act

Social Security:
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

Other Statutes:
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- (X) 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**E. General Civil (Other)** OR **F. Pro Se General Civil**

Real Property
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

Personal Property
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

Bankruptcy
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

Prisoner Petitions
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

Property Rights
- 820 Copyrights
- 830 Patent
- 840 Trademark

Federal Tax Suits
- 870 Taxes (US plaintiff or defendant
- 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- 610 Agriculture
- 620 Other Food &Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

Other Statutes
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- 850 Securities/Commodities/ Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Judicial review under APA, 5 U.S.C. 551 et seq., of DOI actions declaring six mining claims located pursuant to Mining Law, 30 U.S.C. 21 et seq., invalid

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
**JURY DEMAND:**    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 4/25/07    SIGNATURE OF ATTORNEY OF RECORD ~~~~~~~~

2b

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.