## IN THE UNITED STATES DISTRICT COURT
## OF THE DISTRICT OF COLUMBIA

ERNEST K. LEHMANN & ASSOCIATES  )
OF MONTANA, INC., <u>et al.</u>,          )
                                 )
     Plaintiffs,               )
                                 )
     v.                        )          Case No. 07cv00762-HHK
                                 )          Hon. Henry H. Kennedy
                                 )
DIRK KEMPTHORNE,                 )
Secretary of the Interior, <u>et al.</u>,  )
                                 )
     Defendants.               )
_____  )

### FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
### CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    Plaintiffs' Arguments are  Largely Based on Misstatements of the
      Applicable Mining Law, Misunderstandings of Parts of the IBLA's Decision
      and Avoidance of Critical Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiffs Misstate or Misapply Applicable Mining Law

            1.    Plaintiffs are incorrect that profitability is not relevant
                  to the validity of gold and silver mining claims.  . . . . . . . . 3

            2.    Plaintiffs' argument that geological inference should have
                  been used to infer a valuable mineral deposit on the contested
                  claims is contrary to  IBLA decisional law. . . . . . . . . . . . . 5

            3.    Plaintiffs Improperly Apply the Group Claim Rule  . . . . . 7

      B.    Plaintiffs Ignore Two Critical Facets of the IBLA Decision

            1.    Plaintiffs ignore the substance of the IBLA's decision
                  regarding cutoff grade  . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Plaintiffs were not held to a "guaranteed success"
                  standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Plaintiffs' Mine Model and Arguments Ignore the Ramifications of Mining
            Sulfide Ores  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


II.   The IBLA's Decision that BLM Presented A *Prima Facie* Case of the Invalidity
      of the Six Contested Claims Was Not Arbitrary or Capricious . . . . . . . . . . . . . 12

            A.    The IBLA Correctly Determined that BLM Presented A *Prima Facie*
                  Case With Respect to the P 14, P 15 and P 16 and RE 1
                  Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            B.    The IBLA Correctly Determined that BLM Presented A *Prima Facie*
                  Case With Respect to the RE 2 and EB 6 Claims  . . . . . . . . . . . 13

            C.    Plaintiffs' Attacks On the Gruber Report Are Misplaced or
                   Incorrect  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   Plaintiffs Have Not Shown That the IBLA's Decision That Plaintiffs
       Did Not Demonstrate, By A Preponderance of the Evidence,
       the Discovery of Valuable Mineral Deposits on the Invalid Claims
       Was Arbitrary or Capricious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

           A.   The IBLA's Decision That Plaintiffs Failed to Prove the Discovery
                of a  Valuable Mineral Deposit on the P 14, P 15, P16, and RE 1
                Claims Is Supported By Substantial Evidence and Is In Accordance
                With Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

           B.   The IBLA's Decision That Plaintiffs Failed to Prove the Discovery
                of  A Valuable Mineral Deposit on the RE 2 Claim Is Supported By
                Substantial Evidence and Is In Accordance With Applicable
                Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           C.   The IBLA's Decision That Plaintiffs Failed to Prove the Discovery
                of A Valuable Mineral Deposit on the EB 6 Claim Is Supported By
                Substantial Evidence and Is In Accordance With Applicable
                Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    Plaintiffs Have Not Demonstrated That the IBLA's Decision That There
       Was No Unfairness In the Claim Contest Process Was Arbitrary,
       Capricious, Not in Accordance With Applicable Law or Unsupported
       By Substantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barton v. Morton,*
    498 F.2d 288 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chrisman v. Miller,*
    197 U.S. 313 (1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dredge Corp. v. Conn*,
    733 F.2d 704 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hallenbeck v. Kleppe*,
    590 F.2d 852 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hjelvik v. Babbitt,*
    198 F.3d 1072 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mount Royal Joint Venture v. Kempthorne*,
    477 F.3d 745 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Coleman*,
    390 U.S. 599 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18

## ADMINISTRATIVE CASES

*Castle v. Womble*,
    19 L.D. 455 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schlosser v. Pierce*,
    92 IBLA 109 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Bush,*
    157 IBLA 372 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Clouser*,
    144 IBLA 110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Collord,*
    128 IBLA 266 (1994*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 19

*United States v. Dresselhaus,*
    81 IBLA 252 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

*United States v. Feezor,*
    130 IBLA 146 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 20-21

*United States v. Feezor*,
    74 IBLA 56 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Foresyth,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24
    100 IBLA 185 (1987)

*United States v. Foresyth,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
    15 IBLA 43 (1974)

*United States v. Harris,*
    38 IBLA 137 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Laczkowsi,*
    111 IBLA 165, (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Milan Martinek,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 23
    166 IBLA 347 (2005)

*United States v. Mavros*,
    122 IBLA 297 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. New York Mines, Inc.,*
    105 IBLA 171(1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Page*,
    119 IBLA 12 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Taylor*,
    19 IBLA 9 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Williams,*
    65 IBLA 346 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTE**

30 U.S.C. § 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

ERNEST K. LEHMANN & ASSOCIATES )
OF MONTANA, INC., et al.,                      )
                                                            )
          Plaintiffs,                                   )
                                                            )
v.                                                           )          Case No. 07cv00762-HHK
                                                            )          Hon. Henry H. Kennedy
                                                            )
DIRK KEMPTHORNE,                           )
Secretary of the Interior, et al.,            )
                                                            )
          Defendants.                               )
_____)

**FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT**

Federal Defendants hereby submit this memorandum in reply to the Plaintiffs' Ernest K.

Lehmann and Associates, Inc., et al.'s ("Plaintiffs") opposition to the Federal Defendants'

("Defendants") cross-motion for summary judgment and in support of Defendants' cross-motion

for summary judgment.  In our cross-motion, Defendants demonstrated that the Plaintiffs have

failed to meet their substantial burden of showing that the  Interior Board of Land Appeal's

("IBLA") decision that the Bureau of Land Management ("BLM") presented a *prima facie* case

on the six contested claims at issue in this matter was arbitrary, capricious, otherwise not in

accordance with the law or not supported by substantial evidence.[1/]  *See* Defendants' Cross

Motion for Summary Judgment at 24-33 [hereinafter Defs' Mem.].  Defendants also explained

that Plaintiffs have not met their substantial burden of showing that the IBLA's decision that

_____

[1/] The claims at issue are the Patricia 14 Claim ("P 14"), Patricia 15 Claim ("P 15"), Patricia 16
Claim ("P 16"), Royal East 1 Claim ("RE 1"), Royal East 2 Claim ("RE 2") and the East Butte 6
Claim ("EB 6").

1

Plaintiffs failed to prove by a preponderance of the evidence that discoveries of valuable mineral deposits had been made on the contested claims was arbitrary, capricious, otherwise not in accordance with applicable law, or not supported by substantial evidence.  *See* Defs' Mem. at 33-45.  Finally, Defendants explained that Plaintiffs' allegations of unfairness are unfounded. *See* Defs' Mem. at 45.

In their opposition and reply, Plaintiffs argue that the IBLA incorrectly found that the BLM presented a *prima facie* case of the invalidity of the six contested mining claims.  Pltfs' Reply at 2-28.  In this effort, Plaintiffs again rely on misstatements and misapplications of mining law and misguided attacks on the report of mineral examiner James Gruber (the "Gruber Report").  *Id.*  Further, Plaintiffs argue that the IBLA was incorrect to find that Plaintiffs failed to prove the discovery of a valuable mineral deposit on the contested claims.  See Pltfs' Reply at 29-42.  As in their opening brief, Plaintiffs' arguments on this point are based on a skewed view of the law of discovery, disregard of key facts and a misplaced reliance on the mining report of the owner of the plaintiff corporation, Ernest K. Lehmann (the "Lehmann Report").  See Pltfs' Reply at 29-42.

Accordingly, for the reasons stated in Defendant' cross-motion and for those detailed herein, this Court should grant summary judgment in favor of Defendants.

## I.    PLAINTIFFS' ARGUMENTS ARE LARGELY BASED ON MISSTATEMENTS OF THE APPLICABLE MINING LAW, MISUNDERSTANDINGS OF PARTS OF THE IBLA'S DECISION AND AVOIDANCE OF CRITICAL FACTS

At the outset, as we discuss below, many of Plaintiffs' arguments are based on mis-statements of applicable mining law, misunderstanding of the IBLA's decision and avoidance of critical facts concerning the Tootsie Creek deposit.  Plaintiffs' legal arguments are flawed because they rely on misunderstandings of the interplay between profitability and the law

governing claim validity, misconstruction of the Group Claim Rule and improper application of geological inference. *See, e.g.*, Pltfs' Reply at 18-22, 25, 37 n. 20, 39-42. Plaintiffs' misstatements of law are compounded by their continued misreading of the IBLA's decision concerning cutoff-grade and the IBLA's application of the prudent person and profitability tests. *See, e.g.*, Pltfs' Reply at 18-23. All of these flaws are further compounded by Plaintiffs' enduring refusal to contend with the presence of sulfide ores on the contested claims. *See, e.g.*, Pltfs' Reply at 23, 39 n. 22. As we discuss below, and highlight throughout this memorandum, these deficiencies are fatal to several of Plaintiffs' arguments.

### A.  Plaintiffs Misstate or Misapply Applicable Mining Law

#### 1.  Plaintiffs are incorrect that profitability is not relevant to the validity of gold and silver mining claims.

In their reply and opening memoranda, Plaintiffs urge that the potential for profitability should not be considered when evaluating gold and silver mining claims. Pltfs' Reply at 38. As a body of federal and IBLA decisional law shows, this arguments is without merit.

As noted in Defendants' opening memorandum, the Mining Law permits location of mining claims where a discovery of a valuable mineral deposit has been made on lands belonging to the United States. *See* Defs' Mem. at 1-2 (citing 30 U.S.C. §§ 22, 26)(emphasis added).[2] In turn, a valuable mineral deposit is demonstrated where minerals of sufficient quality and quantity are uncovered such that a "prudent person," knowing all of the facts, "would be justified in the further expenditure of his labor and means, with a reasonable prospect of developing a paying mine." Defs' Mem. at 2 (quoting *United States v. Coleman*, 390 U.S. 599

---

[2] The term "discovery" is often used synonymously with the concept of a "discovery of a valuable mineral deposit." *See United States v. Foresyth*, 100 IBLA 185, 248 (1987)("*Foresyth II*").

(1968)(discussing *Castle v. Womble*, 19 L.D. 455, 457 (1894))).  In *United States v. Coleman*, the Supreme Court "refined the prudent person test and held that 'profitability is an important consideration in applying the prudent-man test.'"  Defs' Mem. at 2 (quoting *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074 (1999)(quoting *Coleman*, 390 U.S. at 602)(emphasis added)).  This focus on profitability was enshrined in the "marketability test" which "requires a showing that the mineral deposit can be extracted, removed, and marketed at a profit."  *Id.*

The IBLA has "reconciled the notion of profitability articulated in *Coleman* with the lesser standard of a 'reasonable prospect of success' adopted by the Supreme Court in *Chrisman v. Miller*, 197 U.S.  at 322."  *United States v. Milan Martinek*, 166 IBLA 347 (2005).  Thus, in direct contradiction to Plaintiffs' outdated construction of the law of discovery, a "'mineral deposit will be considered valuable where there is a *reasonable likelihood* that the value of the deposit exceeds the costs of extracting, transporting, processing, and marketing it.'"  *Id.* at 352 (emphasis added).  *See also* IBLA Dec., 161 IBLA at 43-44.  In other words, a discovery can only be demonstrated, and a mining claim consequently validated, where the claimant has demonstrated a reasonable likelihood that mining a deposit on the claim will be profitable.  *See id*.

Despite this well-established line of precedent, Plaintiffs argue that the "marketability test," or the importance of profitability, adopted by the Supreme Court in *United States v. Coleman*, 390 U.S. 599 (1968), is not applicable in cases involving gold and silver mining claims because the mineral at issue in *Coleman* was building stone.  Pltfs' Reply at 38, 39 n. 22. *See also* Pltfs' Mem. at 36-37.  However, Plaintiffs' argument – which relies primarily on law review articles – ignores precedent showing that *Coleman* has developed broader applicability over the ensuing decades.  In fact, the Ninth Circuit Court of Appeals, the Tenth Circuit Court of

4

Appeals and the IBLA have adopted, and consistently applied, the marketability test in evaluating whether the discovery of a valuable mineral deposit has occurred in numerous contests involving gold and silver mining claims.  *See, e.g.*, *Dredge Corp. v. Conn*, 733 F.2d 704 (9th Cir. 1984); *Hallenbeck v. Kleppe,* 590 F.2d 852 (10th Cir. 1979); *United States v. Bush*, 157 IBLA 372, 376 (2002); *United States v. Collord*, 128 IBLA 266, 274-75 (1994); *United States v. Laczkowsi*, 111 IBLA 165, 165 (1989); *United States v. Williams*, 65 IBLA 346 (1983); *United States v. Harris*, 38 IBLA 137 (1978).  Accordingly, this Court should reject Plaintiffs' argument that the IBLA incorrectly addressed the potential marketability, or profitability, of the minerals on the contested claims.

> **2.      Plaintiffs' argument that geological inference should have been used to infer a valuable mineral deposit on the contested claim is contrary to IBLA decisional law.**

Plaintiffs challenge Defendants' construction of the rules regarding the proper context in which geological inference may be used arguing that geological inference should have been used to prove the presence of a valuable mineral deposit on the contested claims.  Pltfs' Reply at 39-42.  However, in our opening memorandum we explained that, pursuant to *United States v. Feezor*, "geological inference may be used to show continuity of values throughout the area of the physical exposure and establish that the exposed mineral is 'valuable' within the meaning of the mining laws" only "[o]nce an exposure of a mineral deposit within the limits of a claim has been shown to exist, and demonstrated values have been high and relatively consistent . . . ."  130 IBLA 146, 190 (1994) ("*Feezor* III").  *See also* Defs' Mem. at 35.

Plaintiffs try to evade this clear direction by arguing that Defendants "fail to grasp the difference between a "mineral deposit" and a "valuable mineral deposit."  Pltfs' Reply at 40.  Plaintiffs go on to claim that because, according to their definition, the "term "mineral deposit"

simply means 'that a mineralized area in a vein or lode has been disclosed,'" the sparse evidence

of gold on the surface of the P 14, P 15, P 16 and RE 1claims establishes that such a deposit was

disclosed on each of those claims. *Id.* (quoting *United States v. Feezor*, 74 IBLA 56, 75

(1983)("*Feezor* I").  Plaintiffs' interpretation of *Feezor I* as holding that the mere exposure of

minerals on a claim is equal to demonstrating a mineral deposit on that claim is wrong.  This was

made clear when the *Feezor* I Board quoted from *United States v. Watkins*, (A-30659) aff'd *sub*

*nom Barton v. Morton*, 498 F.2d 288 (9th Cir. 1974).  In *Watkins*, the Board found that

"[a]lthough appellants ha[d] found ore <u>samples</u> with indicated values exceeding $70 per ton, the

record d[id] not support a finding that they ha[d] found a <u>deposit</u> yielding ore of that quality . . . ."

*Id.* (emphasis in original).  In other words, the *Watkins* Board found, and the *Feezor* I Board

seemingly agreed, that mere indications of the presence of minerals in "<u>samples</u>" is not sufficient

to demonstrate that a "<u>deposit</u>" is present on a claim.  Because the use of geological inference is

only appropriate "[o]nce an exposure of a mineral deposit within the limits of a claim has been

shown to exist . . .", *Feezor III*, 130 IBLA at 190, and because Plaintiffs incorrectly assert that

they demonstrated the presence of such mineral deposits on the P 14, P 15, P 16 and RE 1 claims,

Plaintiffs' arguments regarding the availability of geological inference to infer a mineral deposit,

much less a valuable one, on the P 14, P 15, P 16 and RE 1 claims should be rejected.[3]

---

[3] This conflation of the presence of mineral and the presence of a mineral deposit infected Lehmann's report which stated that "**According to the Mineral Examiner an occurrence of valuable mineral exists on each claim**" (Gruber, 1995 p. 2).  By our analysis also each claim has valuable mineral in place." Pltfs' Reply at 41 (citing 1235-36)(emphasis in original).  The report then went on to incorrectly conclude, "Thus it is appropriate, permissible and prudent to utilize other geological data and geological inference to estimate the size and extent of the indicated mineral deposit . . . ." *Id.* As *Feezor I* and *Watkins* make clear neither an "occurrence" or the mere existence of valuable minerals on a claim is equal to the presence of a mineral deposit.  Lacking that prerequisite, Lehmann was clearly incorrect to conclude that it was "permissible" to infer the presence of valuable mineral deposits on the P 14, P15, P 16 and RE 1 claims.

Finally, while Defendants agree that the application of geological inference should be applied on a case-by-case basis, in this case, IBLA correctly found that the inconsistent, and overwhelmingly low values of the samples located on the EB 6 and RE 2 claims compelled a finding that Plaintiffs had not shown that "demonstrated values ha[d] been high and relatively consistent . . . ." on those claims. *Feezor III*, 130 IBLA at 190. *See* Defs' Mem. at 36 (detailing the generally low and inconsistent nature of the sample values found on the EB 6 and RE 2 claims.). It follows that Plaintiffs could not use geological inference to "establish that the exposed mineral . . ." found on EB 6 and RE 2 was "'valuable' within the meaning of the mining laws." Accordingly, Plaintiffs' latest arguments do not change the outcome that Plaintiffs cannot prove the existence of a valuable mineral deposit on the EB 6 and RE 2 claims by geological inference.

### 3.    Plaintiffs Improperly Apply the Group Claim Rule.

The Court should also reject Plaintiffs' argument that it is "well established that a group of mining claims may be considered together for purposes of determining whether a discovery exists on each of the claims," which is based entirely on two concurring opinions – one of which is a footnote – by the same author. Pltfs' Reply at 25. Plaintiffs' reliance on these concurring opinions is misplaced in light of the IBLA's decision in *United States v. Foresyth*, 15 IBLA 43 (1974), which makes clear that "'[i]n order for any claim to be valid, it must be shown that not only a mineral deposit [4] has been found on a claim, but that the deposit on that claim is reasonably perceived as marketable at a profit. To put it more plainly, each claim must

---

[4] As explained above, Plaintiffs are incorrect to assert that uncovering the mere presence of a mineral on a claim is equivalent to demonstrating the presence of a mineral deposit, much less a valuable mineral deposit, on that claim. *See supra* Sec. I.A.2.

7

independently support a discovery.'"  IBLA Dec., 161 IBLA at 92 (quoting *Foresyth*, 15 IBLA at

58 and discussing the Group Claim rule).  Accordingly, in order to avail themselves of the Group

Claim rule Plaintiffs had to show that "the recovery expected from each claim . . . not only

exceed[s] the costs of mining, transporting, milling, and marketing the particular deposit on that

claim but each claim must also bear a *proportionate share* of the development and capital costs

attributable to the combined operations."  *United States v. Collord*, 128 IBLA at 287 (emphasis

added).  As we explained in our opening memorandum, Plaintiffs failed in this effort.  *See* Defs'

Mem. at 32-33.  Becuase the IBLA correctly applied the Group Claim rule in its decision, *see*

IBLA Dec., 161 IBLA at 101, this argument does little more than illustrate that the IBLA was

correct in labeling Plaintiffs' Group Claim rule argument as "too simplistic."  IBLA Dec., 161

IBLA at 101.  *See also* Defs' Mem. at 32-33.

### B.    Plaintiffs Ignore Two Critical Facets of the IBLA Decision

#### 1.    Plaintiffs ignore the substance of the IBLA's decision regarding cutoff grade.

Plaintiffs repeatedly assert that the IBLA's decision rejecting the use of cutoff grade as a

rule of law rendered the decision defective.  *See* Pltfs' Reply at 7-9, 32-33, n. 18.  Plaintiffs

further assert that BLM failed to present a *prima facie* case because Gruber interpreted the

Mining Law as requiring "'an in-place, physical exposure of above-cutoff-grade mineralized rock

on each claim in order for individual claims to meet the test of discovery.'"  Pltfs' Reply at 7

(quoting AR 972).  But, as explained in our opening memorandum, the IBLA held only that ALJ

Sweitzer "went too far in adopting cutoff grade as if it were a rule of law."  IBLA Dec., 161 IBLA

at 93.  Importantly, the Board went on to note that "[t]he use of a cutoff grade is an indicator of

fact" and that its opinion was "not to be construed in any way as rejecting the notion of

establishing a cutoff grade for purposes of determining and assessing facts regarding a mining claim or group of them." *Id.* (citing *United States v. Clouser*, 144 IBLA 110, 199 (1998); *United v. Dresselhaus*, 81 IBLA 252, 264 (1984)).

Plaintiffs argue that the IBLA's ruling on cutoff grade should have "resulted in the IBLA holding that the BLM did not present a *prima facie* case with respect to EB 6 and RE 2 because the BLM did not prove the absence of an exposure of below cutoff grade mineralization within Gruber's valuable mineral deposits." Pltfs' Reply at 9. As the above quoted language makes clear, the IBLA did not reject all use of cutoff grades, it only rejected its use as a "rule of law" and went on to expressly allow the use of cutoff grade as "an indicator of fact." IBLA Dec., 161 IBLA at 93.[5] When taken into account, as an indicator of fact, along with the notably low gold values scattered throughout the invalid claims, Plaintiffs' failure to demonstrate consistent exposures of gold above their own cutoff grade supplied evidentiary support for the IBLA's decision. *See* Defs' Mem. at 24-28, 38, 41-44. Because the IBLA properly took cutoff grades into account while conducting the validity analysis of Plaintiffs' claims "as the factual inquiry it should have been," Plaintiffs' arguments that the IBLA's use of cutoff grades fatally flawed the challenged decision are meritless. *See* IBLA Dec., 161 IBLA at 94; Defs' Mem. at 30 (citing IBLA Dec., 161 IBLA at 73, 93, 96, 101-02). It follows that this Court should reject Plaintiffs cutoff grade arguments.

### 2.    Plaintiffs were not held to a "guaranteed success" standard.

Plaintiffs repeatedly assert that the IBLA held them to a "guaranteed success" standard in

---

[5] Moreover, cutoff or "break even" grades have been used in other cases as indications of the reasonable likelihood for the profitability of claims. *See, e.g.*, *United States v. New York Mines, Inc.*, 105 IBLA 171 (1989) and *United States v. Bagwell*, 143 IBLA 375 n. 15 (1998).

trying to prove discoveries on the contested mining claims.  *See, e.g.*, Pltfs' Cross-Mot. at 23, 35-37; Pltfs' Reply at 16-17 (discussing profitability and the prudent man rule), 20 (discussing profitability and "reasonable prospect of success"); 37-38 (discussing the prudent man and the "marketability test").  These assertions are factually incorrect and, in part, result from Plaintiffs' confusion that profitability is not a consideration in validity determinations of gold mining claims.

Ignoring clear record evidence, Plaintiffs claim that they were required to "prove that success was guaranteed" in order to validate their claims.  Pltfs' Reply at 37.  *See also* Pltfs' Reply at 16-17, 20.  As plainly stated in the IBLA's decision, Plaintiffs were not required to demonstrate that the "deposit be actually mined and milled at a profit or the profitability of mining and milling that deposit be guaranteed."  IBLA Dec., 161 IBLA at 44 (quoting *United States v. Clouser*, 144 IBLA at 113 (internal citations omitted)).  Rather, in determining whether Plaintiffs had proved discoveries on the invalid claims, the IBLA evaluated whether Plaintiffs had shown "a reasonable prospect that the deposit[s]," if any, on Plaintiffs' claims could "be mined, removed and marketed at a profit."  IBLA Dec., 161 IBLA at 43 (citing *United States v. New York Mines, Inc.*, 105 IBLA 171, 182 (1989)).  In sum, Plaintiffs were not required to show a "guarantee of success," and, as detailed in Defendants' opening memorandum, the IBLA was correct to hold that Plaintiffs fell well short of demonstrating a "reasonable prospect" that the minerals on their claims could be mined, removed and marketed at a profit.  *See* Defs' Mem. 33-44.  Accordingly, this Court should reject Plaintiffs' attempts to disturb the IBLA decision.

### C.    Plaintiffs' Mine Model and Arguments Ignore the Ramifications of Mining Sulfide Ores

In their reply memorandum, Plaintiffs claim that the "oxidation/leachability issue was

*created* by Gruber to justify his "high-grading" of the Tootsie Creek deposit." Pltfs' Reply at 39, n22 (emphasis added).[6] The record and case law demonstrate that their argument is without merit.

The crucial flaw in Plaintiffs' mine model is that, unlike Gruber's model, it failed to account for the added reclamation costs associated with mining sulfide ores. IBLA Dec. 161 IBLA at 97-98. The IBLA correctly concluded that this omission necessitated rejection of Plaintiffs' mining model. *See* Defs' Mem. at 40 (discussing the IBLA's citation of *Red Thunder, Inc.*, 129 IBLA 219 (1994) and *United States v. Page*, 119 IBLA 12, 19 n.10 (1991)). Not surprisingly, Plaintiffs ignore Defendants' opening discussion of *Red Thunder*, *Inc.* which involved the Zortman and Landusky mines Plaintiffs "compare[d] with the deposit at Tootsie Creek" while developing their mine model. IBLA Dec., 161 IBLA at 98. In *Red Thunder, Inc.*, the IBLA discussed the increased presence of acid mine drainage, and associated increase in costs, associated with mining in sulfide areas. *Id.* Because the Zortman and Landusky mine is claimed by Plaintiffs as a comparable mine, it is clear that Gruber did not have to "create" the oxide/sulfide issue. Rather, the issue was an inherent feature of the geology in the Tootsie Creek deposit and on the contested claims.[7]

---

[6] This is an echo of the same argument in Plaintiffs' opening memorandum. *See* Pltfs' Mem. at 32-34.

[7] Additional IBLA case law rebuts Plaintiffs' assertion that Gruber "created" the sulfide issue. In *United States v. New York Mines, Inc.*, the mineral examiner found that "oxide zone samples were not representative of 'material to be found underground, in the lower grade sulfide zones.'" 105 IBLA 171, 184 (1989). On that basis, the mineral examiner concluded that no discovery existed on the claims at issue. *Id.* Accordingly, in that case, the IBLA felt compelled to affirm the ALJ's finding that a *prima facie* case of the absence of a valuable mineral deposit had been proven. *Id.* Given the extensive admissions of Plaintiffs' witnesses that the material to be mined in the Tootsie Creek area were sulfide in nature, *see* Defs' Mem. at 39, and the drill hole data demonstrating the presence of sulfide materials at-depth in the Tootsie Creek area, AR at 1079-81, *United States v. New York Mines, Inc.* offers two lessons relevant to this matter. First, the decision further rebuts Plaintiffs' contention that the oxide/sulfide issue was "created" by Gruber. Second, the decision demonstrates that the IBLA properly relied on Gruber's conclusion that values found in near-surface

II.    **The IBLA's Decision that BLM Presented A *Prima Facie* Case of the Invalidity of the Six Contested Claims Was Not Arbitrary or Capricious**

    A.    **The IBLA Correctly Determined that BLM Presented A *Prima Facie* Case With Respect to the P 14, P 15 and P 16 and RE 1Claims**

Plaintiffs argue that the BLM's *prima facie* case with respect to the P 14, P 15, P 16 and RE 1 claims was undercut by the supposed deficiencies of the Gruber Report.  Pltfs' Reply at 5-25.  They are wrong.[9]  First, as we showed in our opening brief, the IBLA properly relied on Gruber's report because cutoff grade is appropriately relied on as an indicator of fact, the use of Circular 831 was appropriate and Gruber properly applied the Group claim rule.  *See* Defs' Mem. at 30-33.  Second, as we also showed, the BLM's *prima facie* case was not based solely on Gruber's opinions.  Defs' Mem. at 25-28.  Therefore, even assuming, *arguendo*, that Gruber's opinions were flawed, IBLA still correctly concluded that the BLM presented a *prima facie* case of invalidity for the P 14, P 15 and P 16 claims based on the low values found in the available sample data and the Plaintiffs' lack of exploration on the claims.  *See* Defs' Mem. at 25-26 (citing IBLA Dec., 161 IBLA at 51, 53, 73).  Similarly, with respect to the RE 1 claim, the IBLA noted that the BLM established a *prima facie* case when Gruber testified that the available sample date demonstrated that "gold values were significantly low throughout the area . . . ."  Defs' Mem. at 26 (quoting IBLA Dec., 161 IBLA at 73 (citing AR 1659-66 (Tr. 159-66))).  This testimony was

_____

oxide zones were not representative of the values that would be found at-depth in the demonstrated sulfide zones when it held that BLM had presented a *prima facie* case that the contested claims were invalid.  *Id.* (showing the sulfide zones, shaded in orange, in the drill holes on the claims).

[9]  Plaintiffs again assert that they should not have had the burden of proof under the APA.  As we demonstrated in our opening memorandum, Plaintiffs' argument ignore controlling precedent, *Foster v. Seaton*, 271 F.2d 836 (D.C. Cir 1959); precedent from the 10th Circuit Court of Appeals, *United States v. Zweifel*, 508 F.2d 1150, 1157 (10th Cir. 1974)("the claimant rather than the government is the proponent of a ruling that he has complied with the mining laws."); and precedent from the 9th Circuit Court of Appeals, *United States v. Springer*, 491 F.2d 239 (9th Cir. 1974)(citing *Foster v. Seaton*, 271 F.2d at 242) and should, accordingly, be rejected.

based on objective data derived from the samples taken by Plaintiffs and the BLM.  Because these objective facts support the IBLA's decision irrespective of the alleged deficiencies in Gruber's report, Plaintiffs have failed to demonstrate that the IBLA's decision was arbitrary, capricious, not in accordance with applicable law or unsupported by substantial evidence.  It follows that this Court should reject Plaintiffs' challenge.

Plaintiffs also accuse Defendant of taking a quote from ALJ Sweitzer's opinion out of context.  Pltfs' Reply at 15.  However, the fact that the specific quote comes from the section of ALJ Sweitzer's decision discussing basic equivalency, which Plaintiffs claim was "invented" by the IBLA, *id.* n. 5, does not change the fact that the judge, after discounting a part of Gruber's analysis, also said in the quoted language that the P 14, P 15, P 16 and RE 1 claims lacked an "exposure of any grade of mineralization within a valuable mineral deposit."  *See* AR at 424. This supports Defendants' argument.  Moreover, contrary to Plaintiffs' insinuation, Defendants' arguments with respect to the *prima facie* case on the P 14, P 15, P 16 and RE 1 claims were based on more than that quote.  *See* Defs' Mot. at 25-26 (discussing the IBLA's findings that low values and lack of exploration on the claims supported the BLM's *prima facie* case).

## B.    The IBLA Correctly Determined that BLM Presented A *Prima Facie* Case With Respect to the RE 2 and EB 6 Claims

Plaintiffs argue in their reply that BLM did not establish a *prima facie* case on the EB 6 and RE 2 claims due to the IBLA's rejection of cutoff grades as a rule of law and because Gruber allegedly did not consider all the facts.  Pltfs' Reply 8-10, 12-14.  As discussed in our opening memorandum, the IBLA, exercising its power of *de novo* review, was satisfied that BLM presented a *prima facie* case of the invalidity of claim RE 2 when Gruber testified that the two high-grade samples found on that claim were demonstrably anomalous when compared to nearby

13

surface and drill hole samples.  *See* Defs' Mem at 28 (citing IBLA Dec., 161 IBLA at 96 (citing

AR at 1836-37)(Tr. 336-37)).  Further supporting its decision that the BLM presented a *prima*

*facie* case with respect to the RE 2 claim, the IBLA credited Gruber's testimony, based on the

objective data, that no trend could be found across the claim with averages higher than 172 ppb,

that "higher values of approximately 500 ppb were isolated at best" and that exposures on the

claim were not well oxidized, i.e., they were composed of low value sulfide materials.  IBLA

Dec., 161 IBLA at 73 (citing AR at 1659-1666 (Tr. 159-166)).  Accordingly, even assuming

Gruber's analysis was flawed, the objective sample data independently supplied substantial

evidence for the IBLA's decision and the decision should not be disturbed.

 With respect to the EB 6 claim, the IBLA held that BLM proved a *prima facie* case of

invalidity when Gruber testified that a large part of the only identified deposit on the claim was

shared with, and was thus attributable to, the senior Butte 48 claim.  *See* Defs' Mot. at 28-29

(citing IBLA Dec., 161 IBLA at 96 (citing AR 1695-96 (Tr. 195-96))).  Plaintiffs admit that this

part of the IBLA's ruling is correct.  *See* Pltfs' Reply at 11.  The IBLA also noted Gruber's

finding that the only other exposure above cutoff grade (which is an important indicator of fact)

on the claim was not valuable because it was located within a sulfide zone which a prudent person

would not mine given the associated costs and concomitant unprofitability.  *See* Defs' Mot. at 28-

29 (citing IBLA Dec., 161 IBLA at 96 (citing AR 1695-96 (Tr. 195-96))).  *See also supra* Sec.

I.C.  Again, these conclusions do not rely on any "flawed" analysis by Gruber.  Rather, these

conclusions are supported by objective facts that one exposure of a valuable mineral on EB 6 was

located on a senior claim and that the only exposure of any grade approaching profitability was

located within a sulfide zone a prudent person would not mine because of the associated profit-

loss.  Accordingly, Plaintiffs' arguments should be rejected and this Court should affirm the

IBLA's holding that the BLM presented a *prima facie* case with respect to the EB 6 claim.

### C.    Plaintiffs' Attacks On the Gruber Report Are Misplaced or Incorrect

As discussed in Defendants' opening memorandum, Plaintiffs' attacks on the Gruber Report are misguided, and their reformulation of them in their reply is no more persuasive.[9]  First, as discussed in detail in our prior brief, Gruber's use of Circular 831 was entirely appropriate and had been previously sanctioned by the IBLA.  *See* Defs' Mem. at 29-30.  Plaintiffs' most recent arguments against the use of Circular 831 are partially rooted in their incorrect assertion that they were required to demonstrate "guaranteed success" rather than a "reasonable likelihood" of turning a profit with their planned mine.  Pltfs' Reply at 17.  As we explained above, *supra* Sec. I.A, the IBLA applied the correct standard, the "reasonable likelihood" standard, in evaluating Plaintiffs' claims.  Accordingly, this prong of Plaintiffs' argument must fail.

Similarly, Plaintiffs argue that the reserve classification system found in Circular 831 and applied by Gruber required "demonstrated success" because it equated "'reserves' with 'valuable mineral deposits . . . .'"  Pltfs' Reply at 20.  However, this argument is just a reassertion of Plaintiffs' erroneous theory that they were held to a "guaranteed success" standard as it relates to the law of discovery.  Accordingly, for the reasons stated above in Section 1.B.2 Plaintiffs' argument must be rejected.

Next, Plaintiffs argue that Gruber's alleged "failure" to consider inferred reserves in his analysis undercut the BLM's *prima facie* case.  Pltfs' Reply at 21.  This argument, at its core, is just a restatement of Plaintiffs' incorrect assertion that they should have been allowed to use

---

[9] Much of Plaintiffs' argument on this point relies on th 2007 Handbook for Mineral Examiners. This reliance is misplaced given that the Gruber report was authored in 1992-93, the hearing occurred in 1995 and the IBLA's decision was released in 2004.  It is unreasonable to rely on a handbook released years after these events.

geological inference to infer valuable mineral deposits on the contested claims in face of the low and inconsistent sample values. As discussed above, Plaintiffs cannot use geological inference to substitute for the actual exposure of a valuable mineral deposit on the contested claims and this argument should be rejected. *See supra* Sec. I.A.2.

Plaintiffs' argument that Gruber misclassified the "majority of RE 1 and the entirety of P14-16 as 'undiscovered resources'" also lacks factual and legal merit. Plaintiffs assert, again, that the mere exposure of minerals on the claim required that the areas be classified as 'indicated' and/or 'measured' resources." *See* Pltfs' Reply at 22 (citing AR 1086-93). This is merely a restatement of Plaintiffs' argument that the mere exposure of mineral on a claim is equivalent to the exposure of a mineral deposit on that claim. As we demonstrated above, Section I.A.2, this assumption is faulty and Plaintiffs' argument must be rejected.

Plaintiffs' allegations that Gruber's mine model was not prudent are rooted in their refusal to address the sulfide nature of the Tootsie Creek deposit, which would hamper efforts to approach profitability. As discussed above, the sulfide issue is critical and was essentially ignored by Plaintiffs. Section I.C. Plaintiffs accuse Gruber of focusing on "some isolated, high grade zones and proceed[ing] to develop a model to mine only those little zones." Pltfs' Reply at 24. Plaintiffs conveniently ignore, however, that Gruber's model provided for mining high-grade materials in "little zones" – a prudent decision given the generally low values on the contested claims – and it avoided mining in the indisputedly profit-ruining sulfide areas – another prudent decision. Moreover, Gruber's mine model was based on a text that he testified was authoritative in the field, "Gold Heap Leaching Plans and Costs for Mining and Heap Leaching A Small Gold

Deposit." AR at 1679-81 (Tr. 179-81).[10]  Plaintiffs' objection is simply that Gruber did not

follow Lehmann's "advice" by using the model Plaintiffs apparently preferred.  *See* Pltfs' Reply

at 23 ("Mr. Lehmann repeatedly advised Gruber that the Tootsie Creek Deposit was a low-grade,

large tonnage, disseminated gold deposit and asked that Gruber analyze it as such.").  But, as the

IBLA correctly concluded, Gruber's model was preferable to Lehmann's because, at a minimum,

it addressed the sulfide issue.  Accordingly, Plaintiffs' argument should be rejected.[11]

### III.    Plaintiffs Have Not Shown That the IBLA's Decision That Plaintiffs Did Not Demonstrate, By A Preponderance of the Evidence, the Discovery of Valuable Mineral Deposits on the Invalid Claims Was Arbitrary or Capricious

As explained in Defendants' opening memorandum, the only other question before this

Court is whether Plaintiffs have sustained their substantial burden of proving that the IBLA's

decision holding the contested claims invalid for Plaintiffs' failure to make a discovery prior to

the withdrawal of the Tootsie Creek area from mineral entry was arbitrary, capricious, not in

accord with applicable law or not supported by substantial facts.  Defs' Mem. at 33-35.  As we

demonstrated in our opening memorandum, *see* Defs' Mem. at 35-44, and as we further

demonstrate below, Plaintiffs have failed to meet this burden.

### A.    The IBLA's Decision That Plaintiffs Failed to Prove the Discovery of A Valuable Mineral Deposit on the P 14, P15, P 16 and RE 1 Claims Is Supported By Substantial Evidence and Is In Accordance With Applicable Law

Plaintiffs argue that a discovery should be inferred upon the contested claims because the

---

[10] The mine model was only assembled to calculate a cutoff grade.  The IBLA's decisions rested on the generally low values found in the sample data and not on cutoff grade. Accordingly, even if there were concerns with Gruber's mining model they would be inconsequential.

[11] As stated above, Plaintiffs' final argument regarding Gruber's "failure" to apply the Group Claim Rule must be rejected because Plaintiffs' own analysis of the rule is "too simplistic."  *See supra* Section I.E.

IBLA allegedly applied a "guaranteed success" standard in its validity determination, improperly applied the *Coleman* marketability test and improperly found that Plaintiffs could not use geological inference to infer a valuable mineral deposit on the contested claims. Pltfs' Reply at 35-42. As these are the only arguments presented in Plaintiffs' reply in support of the P 14, P 15, P 16 and RE 1 claims, Defendant addresses these claims first, then turns to a separate discussion of the EB 6 and RE 2 claims.

In finding that the Patricia claims (P 14, P 15 and P 16) were invalid for lack of discovery of a valuable mineral deposit, the IBLA focused on the lack of exploration on the Patricia claims and the corresponding lack of sample evidence as well as Plaintiffs' admission that their alleged discovery of a valuable mineral deposit was based on the improper use of geological inference. *See* Defs' Mem. at 42 (citing IBLA Dec., 161 IBLA at 102). As we discussed above, and in our opening memorandum, Defs' Mem. at 35-36, Plaintiffs' use of geological inference to infer a valuable mineral deposit on these claims is inappropriate because of the low values found in the available sample data. *See supra* Sec. I.A.2. Accordingly, the IBLA's decision that Plaintiffs failed to demonstrate the discovery of a valuable mineral deposit on the Patricia claims is supported by substantial evidence and in accordance with applicable mining law and should not be disturbed by this Court.

In finding that Plaintiffs failed to prove the discovery of a valuable mineral deposit on the RE 1 claim, the IBLA focused on objective facts as derived from the available sample data. *See* Defs' Mem. at 40-42. Specifically, the IBLA noted that of 190 samples available for the claim, only 20 reflected values above Lehmann's artificially low cutoff grade of 400 ppb. IBLA Dec., 161 IBLA at 102 (discussing AR at 1306-14, 1459 (Lehmann Rep., App. 9.1a, Fig. 9.4). The IBLA also noted that the 9 values above 500 ppb, were surrounded "by samples of markedly

18

lower values." IBLA Dec., 161 IBLA at 102 (discussing AR at 1459 (Lehmann Rep., Fig. 9.4)).

Finally, the IBLA discussed the drill hole data available for the RE 1 claim, noting that only one

sample held values over 240 ppb and twelve samples contained gold values too low to be detected

by the assay. *Id.* (discussing AR at 1378-79 (Lehmann Rep., App. 9.2a)).

Accordingly, the IBLA's decision is backed by substantial evidence and is in accordance

with applicable law. Moreover, the decision warrants extra weight because "'any doubt on the

issue of discovery raised by the evidence must be resolved against the mining claimant, who bears

the risk of nonpersuasion,'" *United States v. Collord*, 128 IBLA at 268 (quoting *United States v.

Taylor*, 19 IBLA 9, 22-23 (1975)). Accordingly, it is clear that Plaintiffs have not demonstrated

fault in the IBLA's decision.

B.    **The IBLA's Decision That Plaintiffs Failed to Prove the Discovery of A
      Valuable Mineral Deposit on the RE 2 Claim Is Supported By Substantial
      Evidence and Is In Accordance With Applicable Law**

As discussed in Defendants' opening memorandum, Plaintiffs have failed to show that the

IBLA's decision finding the RE 2 claim invalid for lack of discovery of a valuable mineral

deposit was arbitrary, capricious, not in accord with applicable law or unsupported by substantial

facts. *See* Defs' Mem. at 33-37, 41-42. In their reply, Plaintiffs misstate Defendants' position

and rely on inapposite factual contentions. *See* Pltfs' Reply at 34-35. First, Plaintiffs claim that

Defendants argue that the portion of the mineral deposit lying on RE 2 "is not really a valuable

deposit because its existence is only inferred." Pltfs' Reply at 34 (quoting Defs' Mem. at 37). In

fact, Defendant made no assertion that the deposits were not valuable mineral deposits. Rather,

on the cited page, Defendant argued that the "low and demonstrably inconsistent values found

both on the surface and in the drill hole data for the EB 6 and RE 2 claims prevents the use of

'geological inference [to] . . . establish that the exposed mineral is "valuable" within the meaning

of the mining laws.'" Defs' Mem. at 37 (citing *United States v. Feezor*, 130 IBLA at 190).  In

other words, Defendant argued, correctly, that any deposit on the RE 2 claim could not be

inferred to be valuable *in the face of* the low and inconsistent values found in the sample data for

the claim.  Accordingly, this Court should reject Plaintiffs' arguments on this point.

Plaintiffs' factual arguments with respect to the RE 2 claim further hamper their attempt to

demonstrate a deficiency in the IBLA's opinion.  Plaintiffs urge that consideration of an

additional five samples would have changed the IBLA's determination that the RE 2 claim did

not contain a discovery.  Pltfs' Reply at 35 (citing Pltfs' Mem. at 41).  Ironically, consideration of

the five samples, with values of 205 ppb, 120 ppb, 238 ppb, 204 ppb and 537 ppb, only support

the IBLA's decision that the values found on the claim were generally low.  Additionally the

inconsistency in these samples,[12] demonstrated by the fact that these low-value samples bracketed

the two high grade samples on the claim, further strengthens the conclusion that any mineral

deposit on the claim could not be inferred to be valuable or extend to the area of these low-value

samples.  *See Feezor* III, 130 IBLA at 190 ("geological inference may be used to show continuity

of values throughout the area of the physical exposure and establish that the exposed mineral is

"valuable" within the meaning of the mining laws" only "[o]nce an exposure of a mineral deposit

within the limits of a claim has been shown to exist, and demonstrated values have been high and

relatively consistent . . . .").  *See also* Defs' Mem. at 35.

For these reasons, and for the reasons stated in Defendants' opening memorandum,

Plaintiffs have not carried their substantial burden of demonstrating that the IBLA's decision that

---

[12] *See* Pltfs' Mem. at 41 ("Immediately north of Mr. Gruber's valuable mineral deposit on RE 2 are numerous rock samples taken by ELAM with the following grades (from south to north): **205 ppb, 120 ppb, 238 ppb**, 2,338 ppb, **204 ppb, 537 ppb**, 3,389.")(emphasis added).

Plaintiffs did not prove the discovery of a valuable mineral deposit on the RE 2 claim was arbitrary, capricious, not accordance with applicable law or unsupported by substantial evidence in the record.  Accordingly, this Court should grant judgment to Defendants.

> **C.    The IBLA's Decision That Plaintiffs Failed to Prove the Discovery of A Valuable Mineral Deposit on the EB 6 Claim Is Supported By Substantial Evidence and Is In Accordance With Applicable Law**

As demonstrated in Defendants' opening memorandum, Plaintiffs have failed to show that the IBLA's decision finding the EB 6 claim invalid for lack of discovery of a valuable mineral deposit was arbitrary, capricious or not in accord with applicable law.  *See* Defs' Mem. at 35-40.

Plaintiffs argue that "because the relevant portion of EB 6 contains reserves and is bracketed by two valid claims held by ELAM and upon which the same valuable mineral deposit exists, a discovery exists on EB 6 under both the 'independent mine rule' and the Group Claim Rule."  Pltfs' Reply at 29.  Plaintiffs' contention is incorrect for at least two reasons.  First, as explained above and recognized by the IBLA, Plaintiffs' construction of the Group Claim rule is incorrect and too simplistic and their desire for "bulk validation" of their claims has been expressly rejected.  *See supra* Sec. I.E.  Second, IBLA case law makes clear that information from adjacent claims cannot be used to infer a valuable mineral deposit on a claim absent an actual exposure of a valuable mineral deposit on a claim.  *See Schlosser v. Pierce*, 92 IBLA 109, 128 (1986)("the existence of mineral on one claim cannot, by geological inference or otherwise, support the existence of mineral on another contiguous or nearby claim.")(citing *United States v. Dresselhaus*, 81 IBLA 252 (1984)).  As the record makes clear, no such deposit was demonstrated on the EB 6 claim, so the presence of deposits on adjacent claims is inapposite.

Plaintiffs further complain that the IBLA required them to "expose minerals within a valuable mineral deposit determined by the government's expert to exist on the claim . . . ."  Pltfs'

Reply at 30, 32. They are wrong. Indeed, IBLA ruled that the high grade samples found in the

TCE 2 drill hole data for the EB 6 claim did not constitute the exposure of a valuable mineral

deposit because it was located within a sulfide zone. *See* IBLA Dec., 161 IBLA at 97-98. As

noted above, a "'mineral deposit will be considered valuable where there is a *reasonable*

*likelihood* that the value of the deposit exceeds the costs of extracting, transporting, processing,

and marketing it.'" *United States v. Milan Martinek*, 166 IBLA 347, 352 (2005)(emphasis added).

The IBLA took this into account when it rejected Plaintiffs' argument that the high grade samples

in the TCE 2 drill hole constituted the discovery of a valuable mineral deposit on that claim. As

noted above, these high grade samples were located well within a sulfide zone and Gruber's

unrebuted testimony demonstrated that a prudent person would not mine the area given the high

costs associated with doing so. IBLA Dec., 161 IBLA at 97-98. In other words, the IBLA found

that there was not a "reasonable likelihood that the value of the deposit [would] exceed[] the costs

of extracting, transporting, processing and marketing . . ." the postulated deposit and, as such, any

deposit present at-depth on EB 6 was not a valuable one. *United States v. Milan Martinek*, 166

IBLA at 352. It follows that Plaintiffs' argument must be rejected.

Plaintiffs also urge that surface sample MTL R 854, with a value of 960 ppb, and the data

from drill hole TCE 1, which crossed through the shallow oxide zone on EB 6, support their

assertion that a valuable mineral deposit was proven on the EB 6 claim. Pltfs' Reply at 32. As

with Plaintiffs' arguments regarding the RE 2 claim, the request to consider these additional

samples only strengthens Defendants' case. While Plaintiffs tout the value of surface sample

MTL R 854, they conveniently minimize the gold values found in the samples in the TCE 1drill

hole (220 ppb, 360 ppb, 210 ppb and 220 ppb) by referring to them only as "four gold-bearing

samples . . . ." Pltfs' Reply at 37. Taken into account, these low values dilute the 960 ppb value

of surface sample MTL R 854, and weaken Plaintiffs' assertion that a valuable mineral deposit existed on the EB 6 claim.  Accordingly, the IBLA's decision that Plaintiffs failed to prove the presence of a valuable mineral deposit, and therefore a discovery, on the EB 6 claim should be upheld.[13]

Plaintiffs' accusation that Defendants utilized a "rewording of Gruber's and ALJ Sweitzer's cutoff grade requirement,"  Pltfs' Reply at 33, does nothing to advance a showing that the IBLA's decision was arbitrary, capricious, or not in accordance with applicable law.  First, the quoted portion of Defendants' opening memorandum only reflects the obvious, that where drill hole data for a deposit show low gold values, that deposit is not valuable, even if a higher grade surface sample happens to be located near such a deposit.  *See* Defs' Mem. at 37-38 ("*Compare* Pltfs' Mem. at 39 (discussing surface samples on EB 6 with gold values of 2530 ppb, 960 ppb and 960 ppb) *with* Pltfs' Mem. at 39 (discussing drill hole values within the "deposit" on EB 6 of 360 ppb, 222 ppb, 220 ppb and 210 ppb.  It is worth noting that the drill hole values are all below even Plaintiffs' cutoff grade.").  Second, this accusation shows again Plaintiffs' misunderstanding of the portion of the IBLA's decision holding that cutoff grade is appropriately used as an "indicator of fact."  Accordingly, Plaintiffs' arguments should be rejected and the IBLA's decision upheld.

**IV.    Plaintiffs Have Not Demonstrated That the IBLA's Decision That There Was No Unfairness In the Claim Contest Process Was Arbitrary, Capricious, Not In Accordance With Applicable Law or Unsupported By Substantial Evidence.**

Plaintiffs assert, that "following a withdrawal, a claimant must be allowed to test and

_____

[13] Plaintiffs also reassert their arguments concerning geological inference.  Because this argument was addressed above in Section I.A.2 and in the discussion of the RE 2 claim, we need not address it again here.

sample his claims to gather evidence that his pre-withdrawal exposures constituted a discovery." Pltfs' Reply at 42 (citing *United States v. Foresyth*, 100 IBLA 185, 207 (1987)).  They further assert that BLM's denial of their 1992 Plan of Operations deprived them of the chance to conduct such post-withdrawal sampling, assaying and testing.  *Id.*  Plaintiffs' argument ignores the facts.

First, Plaintiffs' 1992 Plan of Operations did not even propose to test any sites on the RE 2 or P 14 claims.  IBLA Dec., 161 IBLA at 109 (citing Lehmann Rep., Fig. 8.2).  Second, the 1992 Plan of Operations proposed to drill, for the first time, on the P 15, P 16 claims and on a previously untested portion of EB 6.  *Id.* (Lehmann Rep., Fig. 8, Fig. 9.4).  In light of the fact that the presence of any mineral deposits on the P 15 and P 16 claims were only inferred, and the fact that the Plan of Operations proposed to drill in a new area of EB 6 claim, it is clear that Plaintiffs were not prevented from confirming pre-existing discoveries on those claims.  IBLA Dec., 161 IBLA at 109.  Rather, they were prevented only from post-withdrawal exploration for valuable mineral deposits to which a miner has no entitlement.  *See United States v. Mavros*, 122 IBLA 297, 311 (1992)(noting that post-withdrawal "the claimant may not drive an adit on . . . a promising structure in hopes of finding valuable minerals, as that activity would be considered further exploration to disclose a deposit not exposed prior to withdrawal.").  Thus, it follows that Plaintiffs' allegations of unfairness are unfounded.

Plaintiffs also argue that a letter from Josh Drew, an assistant to Jim Baca, a former director of BLM, evidences an "anti-mining attitude that existed within the Washington Office of the BLM."  Pltfs' Reply at 43.  This accusation construes Mr. Drew's statements out of context. The sentence partially quoted by Plaintiffs states that "[g]iven the cultural sensitivity of the Hills, the tremendous opposition from both elected officials and local residents (and the attendant likelihood of litigation), I suggest we actively pursue measures to prevent mineral activity in this

area." AR at 1043.  Clearly, BLM did not have an "anti-mining" bias.  Rather, it was addressing

and balancing the competing interests of several groups.  *See* AR at 1042 (discussing the

opposition of Native American groups, a member of the House of Representatives and the state

and local press).  Ultimately, BLM decided to withdraw the lands from mineral entry pursuant to

the Federal Land Policy and Management Act.  *See Mount Royal Joint Venture v. Kempthorne*,

477 F.3d 745 (D.C. Cir. 2007).  As mentioned in our opening memorandum, Plaintiffs previously

challenged this withdrawal and failed.  *Id.*; Defs' Mem. at 9 n. 5.  Accordingly, Plaintiffs'

assertion of impropriety based on this letter are unfounded.[14]

## CONCLUSION

For the foregoing reasons, and for those stated in Defendants' opening memorandum, the

Court should grant summary judgment for the Federal Defendants and deny Plaintiffs' motion for

summary judgment.


Dated: March 31, 2008                    Respectfully submitted,

                                         RONALD J. TENPAS
                                         Assistant Attorney General
                                         Environment and Natural Resources Division

Of Counsel:                              /s/ *Mark T. Romley*
Karan A. Dunnigan                        MARK T. ROMLEY
Field Solicitor                                 Trial Attorney
U.S. Department of the Interior          United States Department of Justice
                                         Environment and Natural Resources Division
                                         Natural Resources Section
                                         P.O. Box 663
                                         Washington, D.C. 20044-0663
                                         (ph)(202) 305-0458/(fax)(202) 305-0506

---

[14] Plaintiffs' assertion of an anti-mining bias also makes little sense factually given that eight of
Plaintiffs' fourteen mining claims were approved.

25